(No. 96218)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BORIS P. BONUTTI, Appellee.

*Opinion filed September 23, 2004.*

Lisa Madigan, Attorney General, of Springfield, and Edward C. Deters, State's Attorney, of Effingham (Gary Feinerman, Solicitor General, Linda D. Woloshin and Karen Kaplan, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Stephen E. Norris and Kendra S. Peterson, of Mt. Vernon, and Mary Beth Burns, of Elgin, of the Office of the State's Attorneys Appellate Prosecutor, of counsel), for the People.

Lou J. Viverito, of Taylor Law Offices, P.C., of Effingham, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

Defendant, Boris P. Bonutti, was charged with driving while under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 2002)) and driving with a blood-alcohol concentration of 0.08 or more (625 ILCS 5/11—501(a)(1) (West 2002)). Defendant moved to suppress the results of his breath-alcohol test, arguing that an episode of gastroesophageal reflux rendered those results unreliable. Following an evidentiary hearing, the circuit court of Effingham County granted the motion and suppressed the test results. The appellate court affirmed. 338 Ill. App. 3d 333. We allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315(a).

BACKGROUND

On the evening of April 26, 2001, Illinois State Trooper Richard Largen stopped defendant's vehicle for speeding. After noticing that defendant smelled of alcohol and was slurring his speech, Officer Largen administered a battery of field sobriety tests, which defendant failed. Officer Largen then arrested defendant for driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 2002)). At the station, defendant submitted to a breath-alcohol test, which showed that defendant had a blood-

alcohol concentration of 0.174. Accordingly, defendant was also charged with driving with a blood-alcohol concentration of 0.08 or more (625 ILCS 5/11—501(a)(1) (West 2002)). In addition, defendant's driving privileges were summarily suspended (625 ILCS 5/11—501.1(c) (West 2002)), and that suspension was later confirmed by the Secretary of State (625 ILCS 5/11—501.1(h) (West 2002)).

On July 26, 2001, defendant asked the trial court to rescind the summary suspension. In his motion, defendant argued that the results of his breath-alcohol test were unreliable because the test was administered in violation of the statutorily mandated procedures. Specifically, defendant argued that, in violation of section 1286.310(a) of chapter 20 of the Illinois Administrative Code (20 Ill. Adm. Code § 1286.310(a) (2002)), Officer Largen failed to observe defendant continuously for 20 minutes prior to administering the test and failed to confirm that defendant had not regurgitated during the 20-minute observation period.

On September 10, 2001, a hearing was held on defendant's petition to rescind. At the hearing, Officer Largen testified that he is trained and certified in the administration of breath-alcohol tests. Pursuant to that training, Officer Largen observed defendant continuously for at least 20 minutes prior to administering the breath-alcohol test. During that period, defendant did not ingest anything by mouth, did not show any outward manifestations of pain, and did not burp, belch, or regurgitate. Although defendant did request a glass of water during the observation period, his request was denied. When asked by Officer Largen whether he had taken any medications within the last six hours, defendant responded that he had taken both aspirin and Prilosec.

Defendant, in turn, testified that he suffers from esophageal reflux disorder, which causes acid from his

stomach to rise through his esophagus to the back of his throat. This process causes defendant to suffer pain "similar to a heart attack," and defendant was experiencing a reflux episode during his wait at the police station. Although he did not tell anyone at the station that he was experiencing a reflux episode, he did request a glass of water, which relieves the burning sensation caused by such episodes. Defendant testified that he takes Prilosec to control the buildup of acid in his stomach, and that reflux episodes, while often painful, are usually silent.

The trial court denied defendant's petition for rescission. In so doing, the trial court specifically found that Officer Largen was credible and that there was no reason to doubt that Officer Largen observed defendant continuously for at least 20 minutes prior to administering the test and did not observe any burping or regurgitation during that time. Moreover, the trial court noted the absence of any medical testimony to support defendant's assertions about the effects of esophageal reflux disorder or the uses of Prilosec. Finally, the trial court believed that, if defendant had in fact experienced pain on the magnitude of a heart attack, defendant would have brought that to Officer Largen's attention.

Four days later, defendant filed a "Supplemental Motion to Exclude Breath Test Evidence." Unlike defendant's previous request, which was aimed at rescinding the summary suspension of defendant's driver's license, this motion was aimed at keeping the breath-alcohol test results out of defendant's criminal trial. The supplemental motion was set for hearing on September 18, 2001. Prior to that hearing, the parties agreed that the trial court should base its decision not only on the new evidence presented at the September 18, 2001, hearing, but also on the evidence already presented at the September 10, 2001, hearing.

The September 18, 2001, hearing began with the

testimony of Dr. Karl Rudert, defendant's treating physician. Dr. Rudert testified that defendant has suffered from and been treated for gastroesophageal reflux disorder (GERD) since 1992. GERD results in acid and fluid from the stomach traveling back up the esophagus and into the back of the throat. Defendant treats this condition with Prilosec, a drug that neutralizes stomach acid and thereby reduces the burning sensation associated with a reflux episode. In other words, Prilosec eliminates the pain associated with reflux but not necessarily the reflux itself. Reflux is usually a silent process that is not outwardly manifested, and an episode can be triggered by, among other things, the consumption of alcohol. According to Dr. Rudert, "reflux" and "regurgitation" are synonymous.

At the conclusion of Dr. Rudert's testimony, defendant returned to the stand to confirm both that he experienced an episode of reflux shortly before the breath-alcohol test was administered and that, other than asking for a glass of water, he exhibited no outward manifestations of his condition.

This time, the trial court granted defendant's motion. In so doing, the trial court noted that, in contrast to the prior hearing, defendant presented medical testimony to support his claims. According to the trial court, Dr. Rudert's testimony confirmed that defendant has suffered from and been treated for GERD for several years, that GERD causes acid and fluid from the stomach to travel up the esophagus to the back of the throat, that reflux episodes are often silent and unnoticeable to an outside observer, and that "reflux" is synonymous with "regurgitation." On the basis of this testimony, the trial court concluded that defendant met his burden of demonstrating that the breath-alcohol test results were unreliable. Accordingly, those test results were suppressed.

The State appealed from the order suppressing the breath-alcohol test results, and defendant appealed from the order denying his petition to rescind the summary suspension. The appellate court affirmed both orders. 338 Ill. App. 3d 333. We allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315(a).

## ANALYSIS

On appeal from the granting of a motion to suppress, this court employs a bifurcated standard of review. With respect to factual findings, this court accords a great deal of deference to the trial court and will reverse only if its factual findings are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). On the ultimate question of whether the evidence in question should or should not be suppressed, however, we employ a *de novo* standard. *Sorenson*, 196 Ill. 2d at 431. In this case, the State does not contest any of the trial court's factual findings. Rather, the State's sole argument is that the trial court's reading of section 1286.310(a) of chapter 20 of the Administrative Code is erroneous as a matter of law.

Administrative regulations have the force and effect of law and are construed according to the same standards that govern the construction of statutes. *Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385, 391 (1990). The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184-85 (1999). The construction of a statute is a question of law that is

reviewed *de novo*. *In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000).

The regulation at issue in this case derives from section 11—501.2 of the Illinois Vehicle Code (625 ILCS 5/11—501.2 (West 2002)), which governs the use of breath-alcohol test results in drunk-driving prosecutions. Under section 11—501.2, breath-alcohol test results "shall be admissible," provided that the test is "performed according to standards promulgated by the Department of State Police." 625 ILCS 5/11—501.2 (West 2002). Those standards, in turn, are set forth in section 1286.310(a) of chapter 20 of the Administrative Code, which states:

"(a) Prior to obtaining a breath analysis reading from a subject, the BAO or another agency employee shall continuously observe the subject for at least 20 minutes.

(1) During the 20 minute observation period the subject shall be deprived of alcohol and foreign substances and shall not have regurgitated or vomited.

(2) if the subject regurgitates or vomits during the observation (deprivation) period, the process shall be started over by having the individual rinse the oral cavity with water.

(3) If the individual continues to regurgitate or vomit, alternate testing shall be considered." 20 Ill. Adm. Code § 1286.310(a) (2002).

According to the State, the sole inquiry under section 1286.310(a) is whether or not the testing officer *actually observes* any vomiting or regurgitating during the 20-minute observation period. If the officer does observe vomiting or regurgitation during that period, the test results are presumptively unreliable and therefore inadmissible. Conversely, if the officer does *not* observe vomiting or regurgitation during that period, the test results are presumptively reliable and therefore admissible as a matter of law. In other words, under the State's reading of section 1286.310(a), any inquiry into whether the subject *in fact* vomited or regurgitated is both ir-

relevant and inappropriate, as the officer's observations are solely dispositive.

Like both the trial court and the appellate court, we categorically reject the State's reading of section 1286.310(a). First, the State's reading finds no support in the text of section 1286.310(a). Section 1286.310(a)(1) plainly states that "[d]uring the 20 minute observation period the subject shall be deprived of alcohol and foreign substances and *shall not have regurgitated or vomited.*" (Emphasis added.) 20 Ill. Adm. Code § 1286.310(a)(1) (2002). Section 1286.310(a)(2), in turn, provides that *"[i]f the subject regurgitates or vomits* during the observation (deprivation) period, the process shall be started over by having the individual rinse the oral cavity with water." (Emphasis added.) 20 Ill. Adm. Code § 1286.310(a)(2) (2002). Neither of these clauses in any way speaks to the officer's observations. On the contrary, both clauses speak exclusively to the subject's actions, which were properly the focus of the trial court's attention in this case.

Second, the State's reading of section 1286.310(a) finds no support in public policy. As the appellate court below correctly noted, the purpose of section 1286.310(a) is to ensure that only accurate breath-alcohol tests are admitted into evidence against a criminal defendant. 338 Ill. App. 3d at 341. The State's reading of section 1286.310(a) wholly undermines this purpose by virtually ensuring that *inaccurate* test results will be admitted. In this case, for example, the trial court believed that Officer Largen both observed defendant continuously for 20 minutes and failed to notice any vomiting or regurgitation during that period. But the trial court also believed that defendant has long suffered from GERD, that GERD results in silent, unobservable regurgitation, and that defendant experienced a reflux episode during the 20-minute observation period. Thus, the trial court believed

that, despite Officer Largen's diligence, the results of defendant's breath-alcohol test may have been compromised by an episode of reflux. If the State had had its way, the trial court nevertheless would have been compelled to admit those results, treat them as reliable, and perhaps even use them as the basis for a criminal conviction. The problem, then, is that, while the State's reading of section 1286.310(a) ensures that breath-alcohol tests are *admissible*, it does nothing to ensure that those results, once admitted, are *reliable*. And reliability, after all, is the paramount concern.

The State responds with a public policy argument of its own. According to the State, "[o]nce substantial compliance with the regulation is taken out of the objective officer's control and put into a defendant's control, defendants across the board will have a ready way to circumvent the suspension rules and impair their ultimate prosecutions for driving under the influence of alcohol." In other words, the State is convinced that today's decision will allow every future DUI defendant to walk into court with a manufactured GERD defense and walk out of court with an acquittal. This argument is wholly without merit, and it does a tremendous disservice to the trial court's thoughtful decision in this case. Contrary to the State's suggestion, the trial court was not hoodwinked by a manufactured defense. On the contrary, the trial court was convinced by the testimony of defendant's *personal physician*, who testified both to the nature of GERD and to defendant's 10-year bout with that condition. As the trial court explained it:

"The State has made reference to this being a perfect defense for this type of offense, and I have to admit candidly that initially there was some skepticism on this Court's part with respect to issues related to Mr. Bonutti's condition. For this to be the perfect defense for Mr. Bonutti, then one would have to think that he somehow has planned this since 1992 and has been treated at least since 1995 by Dr. Rudert."

As these comments illustrate, there is absolutely no foundation for the State's belief that, after today, "defendants across the board will have a ready way to circumvent the suspension rules and impair their ultimate prosecutions for driving under the influence." Trial courts are smarter than that, and they appreciate the distinction between a family physician who has treated the accused for years and a hired gun who first met the accused last Tuesday.

In closing, we note that this is not the type of suppression case in which clear evidence of criminal wrongdoing is withheld from the fact finder because of a prosecutorial misstep. Section 1286.310(a) exists because regurgitation within 20 minutes of a breath-alcohol test can render a *false positive*. In other words, a lack of compliance with section 1286.310(a) has the potential to create criminals out of people who are not. This is not a "technicality," and it is not a contingency that this court will countenance.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*