SECOND DIVISION

September 6, 2005

No. 1-04-1404

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )                 )

NEIL OLSON, ) Honorable

) Lawrence Terrell, 

 Defendant-Appellant. ) Judge Presiding.

     

JUSTICE WOLFSON, delivered the opinion of the court:

Following a jury trial, defendant Neil Olson, who proceeded 
pro se
, was found guilty of burglary and sentenced to six years' imprisonment.  On appeal, defendant contends that his arrest was unlawful because the Union Pacific Railroad police had no authority to make such an arrest; any evidence seized from his residence should not have been admitted at trial because the railroad police unlawfully entered his premises without a search or arrest warrant; and the identification and evidence obtained by the railroad police were unlawful.  We reverse and remand.

Prior to trial, defendant discharged his appointed counsel and represented himself.  He filed a motion to quash his arrest and suppress evidence alleging that his fourth amendment rights were violated when railroad police searched his premises without a valid warrant and arrested him without probable cause or an arrest or search warrant.  Defendant further argued that all of the evidence, including his identification and statements, were 
obtained as a result of the unlawful search and were thus inadmissible under the exclusionary rule.

At the hearing on his motion, defendant testified that about 2 a.m. on November 26, 2002, he was awakened by pounding on his door.  When defendant opened the door a crack, he saw "two police officers it looked like battle fatigues were at the door [
sic
]." One of the officers pointed a gun at him, and asked if they could question him about some burglaries that had occurred in the Union Pacific Railroad yards.

When defendant attempted to close the door, an officer held a gun on him and pushed the door bolt over.  Defendant stepped back, and the officers entered his room.  The officers forced him to sit on his bed, and an officer, who defendant believed to be Officer Kalinowski, raised his pistol and threatened to beat him if he did not cooperate.  Defendant told them that he did not know what they were talking about.  The officers then went through his drawers, mattress, and bathroom.  Defendant claimed that the officers told him to get dressed and transported him to the Bellwood train station before taking him to the Bellwood police station.

On cross-examination, defendant stated that he went to bed about 10:15 p.m. on November 25, 2002.  About 11:30 p.m., he woke up and went to the White Hen for something to eat.  He stated that it was a cold night with no rain or snow, and upon his return, he went back to bed until the officers woke him at 2 a.m. He claimed that his clothes were not wet, except for the bottom inch of his pants, and that the officers never read him his 
Miranda
 rights.

Lieutenant Mark Kalinowski, senior special agent supervisor for the Union Pacific Police Department, testified that about 2 a.m. on November 26, 2002, he and another railroad agent went to 2448 North Mannheim Road in Franklin Park to follow up on a burglary investigation that originated in the Union Pacific Railroad yard.  There, they identified themselves as railroad police officers and asked to speak with defendant.  Kalinowski claimed that neither he nor his partner ever had their guns drawn and that they entered defendant's residence only after defendant waved them in saying, "Yeah, sure.  Come on in.  Let's get the whole fucking thing over with."

The officers entered, advised defendant of his 
Miranda
 rights, and obtained his consent to search his residence.  During the ensuing search, the officers found a hooded black sweatshirt, a knit cap, a dirty pair of blue jeans, and a pair of wet boots with a distinctive foot impression.  These items closely resembled those worn by the person other officers had seen in the railroad yard.  Kalinowski described the items as being very dirty and wet and noted that the pants and boots were "soaking wet."  Kalinowski further stated that although defendant told him that he had walked to the White Hen and J.J. Peppers, he observed no wet areas between those establishments and defendant's residence, but there was a stream near the railroad yard.

On cross-examination, Kalinowski confirmed that about 10:45 p.m. on November 25, 2002, he learned of defendant's criminal activity, but that he did not go to defendant's residence until 2 a.m. the next day.  He stated that he did not see defendant burglarize any railroad car on November 23
rd
 or November 25
th
, but asserted that Agent Jack Wisniewski had, and that defendant had been identified in a photograph from a series of photographs of past suspects that had been arrested in the railroad yard. Following the November 23
rd
 incident, Kalinowski ordered a surveillance of the crime area, and later determined where defendant lived.  From defendant's residence, the officers took a hat, coat, pants, black pair of work boots, and a backpack.

When asked why he had not obtained a search warrant for defendant's residence, Kalinowski responded in pertinent part,

"My past experience, as a law enforcement officer, testifying in a court of law, says that it's unlikely you're going to get a conviction if you don't observe the subject removing merchandise that he had just taken off of railroad property.  I had enough agents to conduct surveillance.  I established the surveillance.  I was in no hurry.  My agents were in no hurry.  That's why we did it the way we did it."

Kalinowski described his team as a private law enforcement agency with full law enforcement powers.

The trial court denied defendant's motion to quash arrest and suppress evidence.  Citing 
People v. Winters
, 97 Ill. 2d 151, 454 N.E.2d 299 (1983), the court concluded that no search warrant was needed to arrest defendant because the arrest was based upon the hot pursuit exception.  The court also concluded that since defendant invited the officers into his residence and the officers saw the clothing in plain view, no search warrant was necessary for the seizure of property.  Finally, the court found the identification of defendant to be proper and noted that defendant had failed to argue or to present evidence on the statement he wanted to suppress.

The case proceeded to a jury trial where defendant continued to represent himself.  The State introduced evidence showing that on November 23, 2002, Wisniewski, a special agent of the Union Pacific Railroad Police Department, was assigned to the special operations response team in the Northlake, Illinois railroad yard due to the high level of theft of railroad cars.  About 11:45 p.m., Wisniewski saw defendant walking through the railroad yard.  Wisniewski moved to within 25 feet of defendant and watched him break into two different railroad cars with the use of a vise grip.  Both times, defendant entered the cars and exited in 10 to 15 seconds.  Defendant then went to a third railroad car and used the vise grip to break the seal and enter.  When defendant exited, he held a brown box labeled Clorox Oxygen Action Multi-Purpose Stain Remover.

Wisniewski radioed his partners and requested assistance.  As he waited for them to arrive, Wisniewski looked at a collection of photographs of individuals who had been previously detained by railroad police.  One of the past offenders in the photos was defendant.

Defendant climbed off the train with the box and proceeded eastbound towards Erie Street.  Wisniewski followed about 25 feet behind, and observed defendant enter a wooded area and proceed east on a dirt path.  As defendant approached a second wooded area, Wisniewski's partner, Agent Ewert, joined him, and the officers decided to detain defendant.

The officers saw defendant put something in the ground; but before they could detain him, he disappeared.  During their search of the area for defendant, the officers discovered a vise grip, bolt cutters, and several boxes, including the Clorox box and boxes of women's clothing.  Wisniewski also recovered a seal that he later determined was the seal from the third railroad car that defendant had broken into.  Kalinowski instructed the officers not to remove any of the items from the scene in order to set a trap for defendant when he returned for them.

On the evening of November 25, 2002, Wisniewski was again on surveillance when he saw defendant ride towards him on a bicycle. After losing sight of defendant for a moment, Wisniewski saw him crawling through the brush.  Defendant retrieved the vise grip and bolt cutters, placed them under his jacket, and walked towards Wisniewski.  After radioing for assistance, Wisniewski followed defendant.

At this time, Ewert also spotted defendant and saw him break into another railroad car.  When defendant saw Ewert, defendant ran and escaped capture once again.

Agents Bassy and Kalinowski then obtained defendant's last known address, 2248 North Mannheim Road in Franklin Park, and proceeded there about 2 a.m. on November 26, 2002.  When the officers knocked on defendant's door, defendant answered, identified himself as Neil Olson, and consented to the officers' entry.  The officers confirmed that defendant matched the photograph they had of him on file.  Defendant then consented to a search of his residence, and the officers saw in plain view a pair of wet blue jeans, a pair of wet black work boots, and a sweatshirt and knit cap with leaves on them.  These items matched the description of the clothing worn by the individual Wisniewski and Ewert attempted to detain on November 25, 2002.

Defendant was found guilty of burglary on this evidence and sentenced.  In this appeal, defendant first contends that his arrest was unlawful because the Union Pacific Railroad police had no authority to make such an arrest.  The State responds that defendant has waived this issue for purposes of appeal because he failed to raise it at trial and in a posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).  Defendant counters that we may review this violation of his fourth amendment rights under the plain error rule.  
People v. Vernon
, 346 Ill. App. 3d 775, 777, 805 N.E.2d 1222 (2004).  We will do so.

Section 2 of the Railroad Police Act (Act) states in pertinent part, 

"In the policing of its properties any railroad may provide for appointment and maintenance of such police force as it may find necessary and practicable to aid and supplement the police forces of any municipality in the protection of its property and the protection of the persons and property of its passengers and employees, or otherwise in furtherance of the purposes for which such railroad was organized.  While engaged in the conduct of their employment, the members of such railroad police force have and may exercise like police powers as those conferred upon the police of cities." 610 ILCS 80/2 (West 2002).

As such, railroad agents are " 'cloaked with the authority of the state.' "  
Spencer v. National R.R. Passenger Corp.
, 141 F. Supp. 2d 1147, 1150 (N.D.Ill. 2001), quoting 
United States v. Hoffman
, 498 F. 2d 879, 881 (7
th
 Cir. 1974).

Section 107-4(a-3) of the Code of Criminal Procedure of 1963 (Code) states in pertinent part,

"Any peace officer employed by a law enforcement agency of this State may conduct temporary questioning pursuant to Section 107-14 of this Code and may make arrests in any jurisdiction within this State if (1) the officer is engaged in an investigation of an offense that occurred in the officer's primary jurisdiction and the temporary questioning is conducted or the arrest is made pursuant to that investigation."  725 ILCS 5/107-4(a-3) (West 2002).

The State contends that under section 2 of the Act the railroad police possessed the powers of municipal police officers, and cloaked with this authority, Ewert and Wisniewski observed defendant commit crimes on Union Pacific Railroad property, their primary jurisdiction, and attempted to arrest him.  The State further argues that when defendant twice eluded arrest, Bassy and Kalinowski properly pursued their investigation to defendant's residence and made a valid arrest pursuant to section 107-4(a-3).

Defendant maintains that section 107-4(a-3) did not confer upon Bassy and Kalinowski the authority to make an extraterritorial arrest because they did not meet the statutory requirements of section 107-4(a-3).  We agree.

When interpreting a statute, the fundamental rule is to give effect to the intent of the legislature, the best indicator of which is the statutory language given its plain and ordinary meaning.  
People v. Bonutti
, 212 Ill. 2d 182, 188, 817 N.E.2d 489 (2004).  Where the statute is clear and unambiguous, courts must apply it as written.  
Bonutti
, 212 Ill. 2d at 188. 

"Peace officer" in section 107-4(a-3) is defined by section 107-4(a)(2) as "any peace officer or member of any duly organized State, County, or Municipal peace unit or police force of another State."  725 ILCS 5/107-4(a)(2) (West 2002).  The inclusive language "any peace officer" incorporates the following definition of "peace officer" found in section 2-13 of the Criminal Code of 1961:

" 'Peace officer' means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses."  720 ILCS 5/2-13 (West 2002).

Further, section 107-4(a)(4) defines "law enforcement agency" for purposes of section 107-4(a-3) as "a municipal police department or county sheriff's office of this State."  725 ILCS 5/107-4(a)(4) (West 2002).  By definition, the railroad police in this case did not fall within the parameters of section 107-4(a-3) to enable them to validly arrest defendant outside the jurisdiction of Union Pacific Railroad property hours after observing the crime in the railroad yard.  In addition, the facts do not support the trial court's determination that the officers were acting in hot pursuit of the offender.  See 
People v. Lahr
, 147 Ill. 2d 379, 382, 589 N.E.2d 539 (1992).

Nevertheless, a warrantless arrest by an officer outside his jurisdiction may constitute a valid citizen's arrest, provided that the officer does not use the powers of his office that are unavailable to private citizens.  
Lahr
, 147 Ill. 2d at 382-383.  Here, the record clearly shows that railroad police officers used the authority of their office to gain entry into defendant's residence, which a private citizen would not have been able to do.  Once inside, they used their entry to conduct a search of defendant's residence which revealed incriminating evidence.  Given these circumstances, we cannot conclude that the railroad police officers effectuated a valid private citizen's arrest pursuant to section 107-3.  
Lahr
, 147 Ill. 2d at 384-385 (and cases cited therein).

It follows that the evidence gathered after entering defendant's residence was tainted, and that the trial court erred in denying defendant's motion to quash arrest and suppress evidence.  
People v. Sorenson
, 196 Ill. 2d 425, 431, 752 N.E.2d 1078 (2001).  Accordingly, we reverse defendant's convictions, and remand this case to the trial court for further proceedings.

Since we are remanding this case for further proceedings, we find that the evidence was sufficient to support defendant's conviction.  We, therefore, find there is no double jeopardy problem that would foreclose retrial.  This conclusion should not be read as a determination of innocence or guilt that would be binding on the trial court on retrial.      

For these reasons, we reverse and remand this case for further proceedings consistent with this opinion.

Reversed and remanded, with directions.

GARCIA, P.J., and BURKE, J., concur.