NO. 4-03-0677

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Macon County

JAMIE A. LEIGHTY, ) No. 02CF947

Defendant-Appellant. )

) Honorable

) Timothy J. Steadman,

) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE COOK delivered the opinion of the

court:

On August 6, 2003, defendant, Jamie Leighty, was convicted of unlawful possession of methamphetamine-manufacturing chemicals with the intent to manufacture methamphetamine (720 ILCS 570/401(ii) (West 2002))
 and criminal drug conspiracy (720 ILCS 570/405.1 (West 2002)).  The trial court sentenced defendant to concurrent sentences of 7 1/2 years in prison.  Defendant appeals, alleging the court erred by denying defendant's motion to quash his arrest and suppress evidence.  We affirm.    

I. BACKGROUND

On August 10, 2002, defendant drove approximately 2 1/2 hours from his home in Lawrenceville, Illinois, to a Wal-Mart in Decatur, Illinois, and purchased two packages of pseudoephedrine pills. 

Wal-Mart security officer Mike Catrell contacted Deputy James Root and informed him that defendant had just purchased two boxes of pseudoephedrine pills and possibly some lithium batteries.  Catrell provided a physical description of defendant and his vehicle.

Around the same time, Officer Brian Allison and Officer Pruitt received a dispatch report that a suspect purchased "amounts" or "a large quantity" of pseudoephedrine, and that the suspect was proceeding to the neighboring Walgreen drug store, less than a block away.  Allison and Pruitt located defendant's vehicle in the Walgreen drug store parking lot.  They watched defendant leave Walgreen drug store with purchased items contained in a white plastic bag, get in his car, stop briefly at McDonald's restaurant, and return to the Wal-Mart parking lot.  All of this occurred within 10 minutes time.

Allison and Pruitt proceeded to the Wal-Mart parking lot and initiated a stop on the car.  During the stop, defendant provided identification upon request and told the officers that he was so far from home because he "had gone for a drive" after a fight with his wife.  Allison informed defendant that he was being stopped because they received a complaint that defendant was purchasing pseudoephedrine, possibly to manufacture methamphetamines.  

Upon request, defendant consented to a search of his car and his person.  Allison found nothing suspicious on defendant's person but found items typically used in a methamphetamine lab in the vehicle, including a Wal-Mart sack with two boxes of pseudoephedrine pills on the front passenger side floorboards, two boxes of pseudoephedrine pills in the Walgreen sack, two additional boxes of pseudoephedrine pills, some glass containers, a plastic container and a small hand pump in the trunk.  Police also found lithium batteries inside a Power Rangers toy and a map of Illinois with a clear highlighted portion from Lawrenceville to Decatur.    

James Root then arrived on the scene, and Allison and Pruitt told him what they had found.  The officers then arrested defendant.  Defendant was ultimately convicted of unlawful possession of methamphetamine-manufacturing chemicals with the intent to manufacture methamphetamine (720 ILCS 570/401(ii) (West 2002)) and criminal drug conspiracy (720 ILCS 570/405.1 (West 2002)).                   

II. ANALYSIS 

The issue on appeal is whether the trial court erred by denying defendant's motion to quash his arrest and suppress evidence.  In reviewing a court's ruling on a motion to quash arrest and suppress evidence, we may reverse the court's finding of fact only if it is against the manifest weight of the evidence.  
People v. Bonutti
, 212 Ill. 2d 182, 188, 817 N.E.2d 489, 492 (2004).  We review 
de
 
novo
 the ultimate questions of whether reasonable suspicion existed and whether the evidence should have been suppressed.  
Bonutti
, 212 Ill. 2d at 188, 817 N.E.2d at 492 (regarding 
de
 
novo
 review for suppression of evidence); 
People v. Sorenson
, 196 Ill. 2d 425, 431, 752 N.E.2d 1078, 1083 (2001) (regarding 
de
 
novo
 review for reasonable suspicion).  

Defendant alleges on appeal that all evidence resulting from the police stop of his vehicle should be suppressed because the police did not have reasonable suspicion under the fourth amendment to make the stop.
  "[T]he 'essential purpose' of the fourth amendment is to impose a standard of reasonableness upon the exercise of discretion by government officials, including law enforcement officers, to safeguard the privacy and security of individuals against arbitrary invasions."  
People v. Jones
, 215 Ill. 2d 261, 269, 830 N.E.2d 541, 548 (2005), quoting 
Delaware v. Prouse
, 440 U.S. 648, 653-54, 59 L. Ed. 2d 660, 667, 99 S. Ct. 1391, 1396 (1979).  Reasonableness does not always require a warrant supported by probable cause; rather, reasonableness is determined by balancing the legitimacy of government interests against the degree of intrusion on fourth-amendment interests.  
Jones
, 215 Ill. 2d at 269, 830 N.E.2d at 548-49, citing 
Prouse
, 440 U.S. at 654, 59 L. Ed. 2d at 667-68, 99 S. Ct. at 1396.  
A search is reasonable under the fourth amendment where (1) the officer's action was justified at its inception, and (2) the search was reasonably related in scope to the circumstances that justified the interference in the first place.  
People v. Lampitok
, 207 Ill. 2d 231, 241, 798 N.E.2d 91, 99 (2003), quoting 
Terry v. Ohio
, 392 U.S. 1, 19-20, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879 (1968).  The officer is justified in initiating an investigatory stop where he reasonably believes the person has committed or is about to commit a crime.  
Terry
, 392 U.S. at 22, 20 L. Ed. 2d at 906-07,  88 S. Ct. at 1880.  Reasonable suspicion need not rule out innocent conduct.  
United States v. Arvizu
, 534 U.S. 266, 273, 151 L. Ed. 2d 740, 749, 122 S. Ct. 744, 750 (2002).     

Although consent to a search generally vitiates fourth- amendment concerns, "[w]here an officer's detention of a person exceeds his authority under 
Terry v. Ohio
, a subsequent consent to search can be tainted by that illegality."  
People v. Lomas
, 349 Ill. App. 3d 462, 469, 812 N.E.2d 39, 44 (2004).  The facts of the present case, however, do not indicate an overreaching on the part of the officers.       

In deciding whether reasonable suspicion exists, a law enforcement officer may rely on training and experience to draw inferences and make deductions that may well elude the untrained person.  
Arvizu
, 534 U.S. at 273, 151 L. Ed. 2d at 749-50, 122 S. Ct. at 750-51.  Allison had received specialized training regarding methamphetamine.  He knew that pseudoephedrine and lithium batteries were precursors to methamphetamine, suspects may drive long distances to purchase precursors, and suspects often go to multiple stores to purchase the precursors so as to avoid raising suspicions with store employees.  Here, the officers had reasonable suspicion to believe that a crime was underfoot.  Prior to the stop, Allison and Pruitt had (1) a physical description of the suspect and his vehicle, (2) information regarding the suspect's purchase of "large quantities" of pseudoephedrine, and (3) a chance to observe further behavior.  
Given Allison's training, the above information was more than enough to arouse reasonable suspicion.  

The facts of the present case are in direct contrast to those in 
Lomas
, which found that the officer did not have a reasonable or articulable suspicion that the suspects were about to manufacture methamphetamine.  
Lomas
, 349 Ill. App. 3d at 472, 812 N.E.2d at 47.  The officer in 
Lomas
 relied on an anonymous tip that four individuals had purchased Sudafed at a local Wal-Mart.  
Lomas
, 349 Ill. App. 3d at 464, 812 N.E.2d at 41.  
The officer in 
Lomas
, however, did not provide any evidence to connect the defendants with the individuals implicated in the anonymous tip; notably, the court in 
Lomas
 stressed that the officer did not even mention whether the unknown tipster had left a physical description.  
Lomas
, 349 Ill. App. 3d at 464, 812 N.E.2d at 41.   Additionally, the officer in 
Lomas
 did not label defendants' behavior as out of the ordinary before he stopped them.  
Lomas
, 349 Ill. App. 3d at 465, 812 N.E.2d at 41.  Unlike the officer in 
Lomas
, the officers here were able to articulate a reasonable suspicion based on the physical description of defendant and his vehicle, as well as defendant's suspicious behavior. 

Despite the fact that information regarding defendant available to the officers prior to the stop could also indicate innocent conduct, the information was enough to lead to more than a hunch that criminal activity was afoot.  The officers' actions in stopping defendant to confirm or dispel their suspicions were therefore appropriate.  See 
Terry
, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884-85.

Because the investigatory stop was justified at its inception, the trial court correctly denied defendant's motion to quash his arrest and suppress evidence.  

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed, 

TURNER and STEIGMANN, JJ., concur.