# Illinois Official Reports

## Supreme Court

---

### *People v. Gayden*, 2020 IL 123505

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LANARD GAYDEN, Appellant. |
| Docket No. | 123505 |
| Filed | February 21, 2020 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Patricia Mysza, Deputy Defender, and John R. Breffeilh, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
| | Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Michael M. Glick and Jason F. Krigel, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices                      JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Kilbride, Garman, Karmeier, Theis, and Neville concurred in the judgment and opinion.

Chief Justice Burke concurred in part and dissented in part, with opinion.

## OPINION

¶ 1       Following a bench trial in Cook County circuit court, defendant Lanard Gayden was convicted of unlawful use or possession of a weapon for possessing a shotgun "having one or more barrels less than 18 inches in length," in violation of section 24-1(a)(7)(ii) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/24-1(a)(7)(ii) (West 2014)). Defendant was sentenced to two years in prison and one year of mandatory supervised release (MSR). Defendant appealed, arguing, *inter alia*, that his trial counsel was ineffective for failing to file a motion to suppress the evidence of his guilt. The appellate court declined to decide the ineffective assistance of counsel claim, finding that the record was insufficient to determine the issue. The appellate court noted that defendant could pursue collateral relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)).

¶ 2       Defendant filed a petition for rehearing, informing the appellate court that he lacked standing to file a petition for postconviction relief because he had completed his term of MSR while his appeal was pending. 2018 IL App (1st) 150748-U, ¶ 28. Defendant also argued that the appellate court erred in finding that the record was insufficient to consider his claim of ineffective assistance of counsel. *Id.* In a modified order upon denial of rehearing, the appellate court held that, because defendant had not informed the court that he had been released from custody when he filed his appeal, the court would not consider this new argument upon rehearing. *Id.* The appellate court also found that defendant's argument concerning his ineffective assistance claim was impermissible reargument. *Id.*

¶ 3       This court subsequently allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Apr. 1, 2018).

¶ 4                         BACKGROUND

¶ 5       Defendant was arrested on February 15, 2014, at 8952 S. Burley Avenue in Chicago. The arrest report stated the following. Officers were dispatched to a call of a man with a gun at 8952 S. Burley Avenue. Police officer Patrick Glinski knocked on the door of the listed address. Defendant answered the door holding a shotgun. Defendant was ordered to surrender the weapon. Defendant instead threw the shotgun and attempted to slam the door shut. Officer Glinski then breached the front door. While attempting to place defendant under arrest, defendant pulled away, disobeyed verbal commands, and stiffened his arms and body, causing Officer Glinski to conduct an emergency takedown.

¶ 6       After defendant was placed into custody, Sierra Keys, defendant's girlfriend, told the officers that she had had a verbal altercation with defendant, after which defendant retrieved a

shotgun from the bedroom he shared with Keys. Defendant ordered Keys to pack up her belongings, while holding the shotgun and menacing Keys. Defendant became irate and threatened to put Keys in the trunk of his car if she did not comply with his commands. The officers arrived on the scene while Keys was packing. The officers recovered a loaded sawed-off shotgun with three live shells.

¶ 7 After defendant was transported to the police station for processing, the officers learned that the shotgun had been reported stolen from Des Moines, Iowa. Defendant waived his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)) and, when asked where he got the shotgun, stated that he bought it on the street. When asked about the modification to the shotgun, defendant replied that he "wanted to put an elephant handle to it." The arrest report reflected that defendant was charged with unlawful use of a weapon (720 ILCS 5/24-1(a)(7)(ii) (West 2014)), possession of a firearm without a valid Firearm Owner's Identification Card (430 ILCS 65/2(a)(1) (West 2014)), aggravated assault with a deadly weapon (720 ILCS 5/12(2)(c)(1) (West 2014)), and theft of lost/mislaid property (*id.* § 16-2).

¶ 8 The grand jury returned an indictment against defendant for unlawful use of a weapon for knowingly possessing or carrying a shotgun having one or more barrels less than 18 inches in length. Defendant proceeded to trial on that count, electing to waive his right to jury trial.

¶ 9 At trial, Officer Glinski testified for the State that he was on duty with his partner on February 15, 2014, when they received a dispatch concerning a man with a gun at 8952 S. Burley Avenue, a three-flat building. Glinski knocked on the exterior door of the building, then entered the door and went up to the third floor. When Glinski got to the top of the staircase landing on the third floor, he saw defendant, approximately five feet away in the threshold of the doorway, holding a shotgun. Defendant looked at Glinski, then threw the shotgun on the ground and slammed the door on Glinski. Glinski then knocked in the door and was able to detain defendant. There were two or three children and a woman in the room, as well as defendant. Glinski saw the shotgun that defendant had been holding on the floor. Glinski testified that he never saw anyone other than defendant touch the shotgun.

¶ 10 On cross-examination, Glinski testified that, at some point, there was at least one other man on the scene, but Glinski did not know where the man came from. Glinski said there were 8 to 10 officers on the scene.

¶ 11 Officer John Schaffer also testified for the State that, on February 15, 2014, he responded to a call of a person with a shotgun in front of 8952 S. Burley Avenue. When Schaffer arrived on the scene, he went to the third floor. There were already other Chicago police officers on the scene when Schaffer arrived. When Schaffer entered the apartment, he recovered the shotgun from the floor and unloaded it. The shotgun was a Remington 12-gauge with three live cartridges. Schaffer measured the barrel of the shotgun and determined that it was 17½ inches. The end of the barrel of the shotgun had been manipulated. It was uneven and gritty to the touch, as if it had been sawed off or somehow manipulated from its original state.

¶ 12 Shavonnetay Carpenter testified for defendant that she was a friend of defendant's and was with him around 10:10 p.m. on February 15, 2014. Carpenter testified that a woman named Sierra was also present, as well as a woman named Evelyn, a man named Ray, and someone else that Carpenter could not recall. Defendant's children were also there. Around 10:15 p.m., three Chicago police officers "bum rushed" the door of the apartment. The officers had guns in their hands aimed at defendant. Carpenter denied that defendant had stepped outside the

front door to the apartment before the police rushed in. Carpenter also denied that defendant had a gun in his hands. Carpenter testified that there was no gun in the hallway or in the front room.

¶ 13 Defendant testified in his own defense that on February 15, 2014, he was at 8952 S. Burley Avenue with Sierra Keys, Shavonnetay Carpenter, defendant's roommate Raymond, and defendant's two children. Sierra's sister and her boyfriend were also back and forth. Defendant stated that, right before the police came through the front door, he was in the front room with Raymond, Cervante, and Evelyn. The front door was closed but was unlocked. When defendant heard commotion on his front steps, he went to the door to lock it but saw the doorknob turning and the door opening. Defendant closed the door, but the door was forced back by a hand sticking out with a gun. Defendant backed off, and an officer entered, followed by two more officers.

¶ 14 Defendant denied that he stepped out onto the landing with a gun in his hand prior to the door opening. Defendant denied that he threw a gun in his doorway upon seeing a Chicago police officer. Defendant denied that he remained standing in the front hall of his apartment, with a gun at his feet, as the officers came through the front door. Defendant denied that he ever had a gun that night or that he ever saw the gun that the officers recovered. Defendant did not see an officer walk out of the apartment with a gun and testified that he was "long gone" before the officers said anything to him about a gun.

¶ 15 Defendant testified that, when the officer entered his apartment, the officer immediately grabbed him and detained him. After two or three minutes, the officers took defendant out to the transport car.

¶ 16 In closing, defense counsel argued that the State did not prove its case beyond a reasonable doubt. Defense counsel pointed out that there were at least two other black men in the apartment, as well as three women and two children, when the police entered. Defense counsel noted that defendant was immediately put into custody, arguing that this gave the person who actually had the gun sufficient time to drop the gun and step back. Defense counsel argued that it was more reasonable to think that the police received the call, slammed through the door, and, in the confusion, grabbed the first adult male they saw. The officers put that person into the police car and then recovered the gun.

¶ 17 The trial court found defendant guilty. As noted, defendant was sentenced to two years in prison and one year of MSR. Defendant was discharged from MSR on February 10, 2016.

¶ 18 On December 12, 2016, defendant filed his opening brief in the appellate court, arguing, *inter alia*, that trial counsel was ineffective for failing to file a motion to suppress the shotgun. Defendant argued that a motion to suppress would have been granted because the police had clearly violated his rights under the fourth amendment when they entered his property " 'without a warrant, probable cause, or exigent circumstances' " and recovered the shotgun. 2018 IL App (1st) 150748-U, ¶ 22. The State responded that the motion would have been denied where the officers' warrantless entry into defendant's apartment was lawful, because there was probable cause to arrest him and because exigent circumstances existed. *Id.* Therefore, the failure to file a motion to quash would not support a claim of ineffective assistance of counsel. *Id.*

¶ 19 On February 1, 2018, the appellate court issued its order affirming defendant's conviction. In addressing defendant's ineffective assistance of counsel claim, the appellate court

- 4 -

acknowledged that the court in *People v. Veach*, 2017 IL 120649, cautioned against adopting an approach to ineffective assistance of counsel claims that presumed such claims are always better suited to collateral proceedings. Upon reviewing the record, however, the appellate court found that the record was devoid of evidence that would allow it to determine whether a motion to quash arrest would have been granted or whether the police acted lawfully under the circumstances. The appellate court therefore declined to address defendant's ineffective assistance of counsel claim, pointing out that its decision did not foreclose collateral relief under the Act (725 ILCS 5/122-1 *et seq.* (West 2014)).

¶ 20      On February 20, 2018, defendant filed a petition for rehearing, arguing that the appellate court erred in finding that the record was insufficient to analyze his claim of ineffective assistance of counsel. Defendant also argued that relief under the Act was unavailable to him because he had been released from MSR in February 2016.

¶ 21      On March 22, 2018, the appellate court issued a modified order upon denial of rehearing. 2018 IL App (1st) 150748-U. The appellate court first found that defendant's claim that the record was sufficient to analyze his claim of ineffective assistance of counsel was impermissible reargument under Illinois Supreme Court Rule 367(b) (eff. Nov. 1, 2017). 2018 IL App (1st) 150748-U, ¶ 28. The appellate court also found that defendant's claim concerning the Act violated Rule 367(b) because that issue was never raised in defendant's opening brief or in his reply brief. *Id.* The appellate court's modified order again affirmed defendant's conviction but removed the sentence stating that its decision did not foreclose collateral relief under the Act. *Id.*

¶ 22                                                      ANALYSIS

¶ 23      Defendant raises two issues on appeal. First, defendant argues that the record is sufficient to establish that trial counsel was ineffective for failing to file a motion to suppress on the ground that the officers lacked probable cause or exigent circumstances to forcibly enter defendant's home without a warrant. Second, defendant argues, assuming *arguendo* that the record is insufficient to decide the suppression issue on appeal, that this court should provide him with another opportunity to develop his ineffective assistance of counsel claim. Defendant asks this court to either instruct the appellate court to retain jurisdiction and remand to the trial court for an evidentiary hearing or exercise its supervisory authority and allow defendant to file a petition for postconviction relief.

¶ 24      We first consider defendant's claim that the record was sufficient to address his ineffective assistance of counsel claim. The parties agree that this issue presents a question of law, which this court reviews *de novo*. *People v. Bew*, 228 Ill. 2d 122, 127 (2008).

¶ 25      Defendant argues that the facts were fully developed at trial and that those facts did not provide Officer Glinski with probable cause to believe that defendant had committed a crime. Defendant contends that, in light of *People v. Aguilar*, 2013 IL 112116, the mere observation of a gun, without more, is insufficient to provide the police with probable cause for an arrest. Therefore, defendant had a lawful right to possess a shotgun, to drop that shotgun to the floor of his apartment, and to shut his door upon seeing Officer Glinski—an unwanted guest. Defendant also contends that, regardless of whether Officer Glinski had probable cause to arrest defendant, the police lacked exigent circumstances to force entry into defendant's home, as the mere existence of a gun, without more, is not sufficient to create exigent circumstances.

Defendant argues that, although his shotgun may have been a half-inch shorter than the law allowed, there is no reason to believe that Officer Glinski could have made that distinction from five feet away in the seconds before defendant shut his door.

¶ 26    Based upon these facts, defendant argues that the shotgun was seized in violation of the fourth amendment and would have been suppressed had trial counsel filed the appropriate motion. Without the shotgun and the testimony about the shotgun, the State would have been unable to prove defendant guilty of knowingly possessing a short-barrel shotgun in violation of section 24-1(a)(7)(ii) of the Criminal Code. Defendant claims that trial counsel's failure to file a meritorious motion to suppress the shotgun could not have been an objectively reasonable trial strategy. Consequently, defendant asks this court to find that the record was sufficiently developed to decide defendant's claim of ineffective assistance of counsel on appeal, find that trial counsel was ineffective for failing to file a meritorious motion to suppress the discovery of the shotgun, and reverse defendant's conviction.

¶ 27    Criminal defendants have a constitutional right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. It is well settled that a claim of ineffective assistance of counsel is evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11. Under the *Strickland* test, a defendant must establish both that counsel's performance fell below an objective standard of reasonableness and that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* The failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Id.*

¶ 28    With regard to the filing of a motion to suppress, the decision whether to file such a motion is generally "a matter of trial strategy, which is entitled to great deference." *People v. White*, 221 Ill. 2d 1, 21 (2006), *abrogated on other grounds by People v. Luedemann*, 222 Ill. 2d 530 (2006). In order to establish ineffective assistance based on counsel's failure to file a suppression motion, the defendant must demonstrate both that the unargued suppression motion was meritorious and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed. *Henderson*, 2013 IL 114040, ¶ 15.

¶ 29    As noted, the appellate court found that the record was insufficient to determine whether defendant was lawfully arrested, whether trial counsel's decision concerning the filing of a motion to suppress was strategic, or whether such a motion would have succeeded. 2018 IL App (1st) 150748-U, ¶ 29. Upon review, we agree with the appellate court. The record in this case does not contain sufficient information concerning the circumstances of defendant's arrest from which we could determine whether a motion to suppress would have been meritorious or whether defendant was prejudiced by trial counsel's failure to file a motion to suppress.

¶ 30    Defendant claims that the facts were fully developed at trial. While this may be true concerning the specific charge against defendant, this is not true with regard to the circumstances leading up to and surrounding defendant's arrest.

¶ 31    This case proceeded to trial on the charge of knowingly possessing a shotgun with a barrel that was less than 18 inches in length. See 720 ILCS 5/24-1(a)(7)(ii) (West 2014). Consequently, the State's focus at trial was proving that defendant knowingly possessed the shotgun and that the barrel of the shotgun was less than 18 inches. To that end, Officer Glinski testified that he saw defendant holding the shotgun and saw defendant throw the shotgun on

the ground, before slamming the door to his apartment shut. Glinski then knocked in the door, detained defendant, and observed the shotgun defendant had been holding on the floor. Glinski testified that he never saw anyone but defendant touch the shotgun. Officer Schaffer testified that he recovered the shotgun and determined that the barrel of the shotgun was 17½ inches. Officer Schaffer also testified that the end of the shotgun barrel had been manipulated.

¶ 32　　The preceding testimony was necessary for the State to prove the charge against defendant. The State had no reason to establish the factual basis that gave the officers probable cause to arrest defendant in the first place, as that information was not necessary to prove that defendant knowingly possessed a shotgun with a barrel that was less than 18 inches in length.

¶ 33　　Defendant, however, would have this court find that the lack of testimony concerning probable cause and exigent circumstances compels a conclusion that there was no such probable cause or exigent circumstances. The lack of evidence currently in the record, however, does not establish as fact that there was no evidence to support a probable cause or exigent circumstances determination. The State did not need to establish justification for defendant's arrest at trial because the events leading to defendant's arrest were not at issue. Consequently, it does not follow that the lack of evidence in the record supporting probable cause or exigent circumstances proves that the arrest was unjustified. Again, given the charged offense, the State was required to prove at trial only that defendant knowingly possessed a shotgun and that the barrel of the shotgun was less than 18 inches in length.

¶ 34　　There are enough questions raised in the record concerning the events leading to defendant's arrest that make it impossible to speculate whether a motion to suppress would have been meritorious or whether trial counsel's failure to file a motion to suppress was a matter of trial strategy. Although defendant minimizes the events leading to his arrest, the arrest report contains information surrounding defendant's arrest that was not introduced at defendant's trial. The arrest record stated that officers were dispatched to defendant's building based upon a report of a man with a gun. Defendant's girlfriend, Sierra Keys, told the officers that defendant had retrieved his shotgun after they had a verbal altercation and ordered Keys to pack up her belongings, while holding the shotgun and menacing Keys. Defendant became irate and threatened to put Keys in the trunk of his car if she did not comply with his commands. The officers arrived while Keys was packing. Eight to ten officers were dispatched to the scene.

¶ 35　　Defendant claims that the officers did not know about the incident with Keys prior to his arrest because the arrest report stated that Keys related that information after the officers knocked in his door and arrested him. Because the officers were not questioned about the events leading up to defendant's arrest, however, we can only speculate concerning what the officers knew when they were dispatched to the scene. The current record does not conclusively establish one way or another whether the officers were aware of the threats to Keys when they responded to a report of a man with a gun. The fact that 8 to 10 officers were dispatched to the scene raises a question of whether the officers were aware of the threat, but we cannot make that determination based upon the current record. Certainly information that Keys was being threatened by defendant with a shotgun might establish probable cause or exigent circumstances to justify defendant's arrest, but again, we cannot speculate about the existence of probable cause or exigent circumstances at this stage because there is too much information to which this court and the appellate court are not privy.

¶ 36        Based upon the record in this case, then, we cannot say whether a suppression motion would have been meritorious. Consequently, we cannot determine whether defense counsel's decision not to file a motion to suppress was ineffective assistance of counsel. We therefore affirm the appellate court's finding that the record in this case is devoid of information necessary to fully address and resolve defendant's claim of ineffective assistance of counsel.

¶ 37        Defendant next argues that he is entitled to a decision on the merits of his claim, asking this court to either order the appellate court to retain jurisdiction and remand the matter for an evidentiary hearing in the trial court or to allow defendant to raise his claim in a petition for postconviction relief, even though he is no longer serving his sentence.

¶ 38        Defendant argues that, under the procedural rules in Illinois, a defendant is prohibited from raising claims of ineffective assistance of counsel in petitions for postconviction relief if those claims are capable of being raised on direct appeal. However, because reasonable minds can differ concerning whether the record is sufficiently developed to decide a defendant's claim on appeal, a prudent defendant must raise an apparent claim of ineffective assistance of counsel on direct appeal and then file a petition for postconviction relief if the appellate court on direct appeal finds the record is inadequate to decide the claim. Defendant claims there is a hole in this procedure when a defendant receives a short sentence, as defendant did in this case. With regard to defendants receiving short sentences, the sentences terminate before the appellate court makes a determination as to whether the record is sufficient to decide an ineffective assistance of counsel claim on direct appeal. Those defendants are then barred from bringing that claim in a petition for postconviction relief because they are no longer serving a sentence, resulting in a complete denial of the defendants' right to a decision on the merits of their claims.

¶ 39        The Act provides a procedural mechanism in which a convicted criminal can assert that there was a substantial denial of his or her rights under the Constitution of the United States or the State of Illinois or both, in the proceedings that resulted in his or her conviction. 725 ILCS 5/122-1(a) (West 2014). Postconviction proceedings are not an appeal of the original case but instead are a collateral attack upon the prior conviction. *People v. Harris*, 224 Ill. 2d 115, 124 (2007). Postconviction proceedings afford only limited review of constitutional claims not presented at trial. *Id.* The scope of the postconviction proceeding is limited to constitutional matters that have not been, nor could have been, previously adjudicated. *Id.* Thus, any issues that could have been, but were not, raised on direct appeal are procedurally defaulted. *Id.* at 124-25.

¶ 40        The Act does not provide for postconviction relief once a defendant is no longer "imprisoned in the penitentiary." "Imprisoned in the penitentiary" has been held to include those who have been released from incarceration after timely filing their petitions, those who were on MSR at the time they filed their petitions, those serving any one of consecutive sentences, and those sentenced to probation or released on parole. *People v. Carrera*, 239 Ill. 2d 241, 246 (2010).

¶ 41        Defendant's position is that he could not file a postconviction claim of ineffective assistance of counsel until the appellate court determined on direct appeal that the record was insufficient to decide the claim. As the court recognized in *Harris*, 224 Ill. 2d at 131, however, there is nothing in the Act or in this court's jurisprudence that would prohibit a postconviction proceeding and a direct appeal from proceeding at the same time. In fact, with regard to the version of the Act at issue in *Harris*, the court had found that " 'the legislature removed any

doubt that postconviction petitions must sometimes be filed before termination of proceedings on direct appeal.' " *Id.* at 126-27 (quoting *People v. Rissley*, 206 Ill. 2d 403, 415 (2003)).

¶ 42     Contrary to defendant's argument, then, there is not a "hole" in the procedure, nor does the statute create a class of defendants who never get a decision on the merits of their constitutional claims of ineffective assistance of counsel because they have served their sentences before their direct appeals have been decided. It is clear from our case law that defendant could have filed his postconviction petition before he had fully served his sentence, even if his direct appeal was pending, in order to preserve his postconviction rights.

¶ 43     In *Carrera*, the court held that a defendant was not entitled to postconviction relief, even though he had no other legal remedy, because he was no longer imprisoned for purposes of the Act. *Carrera*, 239 Ill. 2d at 258. Postconviction proceedings are matters of legislative grace, and states " 'have no obligation to provide this avenue of relief.' " *Harris*, 224 Ill. 2d at 135 (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987)). As *Carrera* recognized, this court cannot expand the remedy set forth in the Act in order to bring a defendant's case within the reach of the Act if he has fully served his sentence. *Carrera*, 239 Ill. 2d at 259. Our legislature has enacted a statute under which some defendants with short sentences may have to file their postconviction petitions while their direct appeals are pending, in order to preserve their postconviction rights. It is the legislature's choice to enact such a statute, and this court must enforce the statute as written.

¶ 44     Defendant nonetheless asks this court to exercise its supervisory authority and allow defendants who have completed their sentences while their direct appeals are pending to file petitions for postconviction relief within six months of the date the appellate court judgment becomes final. Defendant cites *People v. Warr*, 54 Ill. 2d 487, 491 (1973), in support of that suggestion, noting that the court in *Warr* exercised its supervisory authority to hold that a defendant convicted of a misdemeanor, who claimed there was a substantial denial of his constitutional rights in the proceedings that resulted in his conviction, could institute a proceeding in the nature of a proceeding under the Act.

¶ 45     The same suggestion was rejected by the court in *Carrera*, and we see no reason to now reconsider that decision. The *Warr* court elected to exercise its supervisory authority because misdemeanor defendants had no remedy otherwise. *Carrera* distinguished *Warr*, noting that the defendant in the case before it had a remedy to challenge his conviction, as long as the challenge was made while the defendant was serving the sentence imposed on that conviction. *Carrera*, 239 Ill. 2d at 259. Here too, defendants serving short sentences are not denied a remedy to challenge their convictions: they can file their postconviction petitions while their direct appeals are pending and while still serving the sentences imposed on their convictions.

¶ 46     Defendant alternatively asks this court to "close the hole" in the Act by instructing the appellate court to retain jurisdiction under Rule 615(b)(2) and to remand the matter for an evidentiary hearing whenever the appellate record establishes a substantial showing of a constitutional violation, if the defendant lacks standing to file a postconviction petition. In support of this request, defendant cites *People v. Fellers*, 2016 IL App (4th) 140486.

¶ 47     In *Fellers*, the court found that the record before it was not sufficient to make a determination on direct appeal concerning whether trial counsel was ineffective in failing to file a motion to suppress. *Id.* ¶ 34. Because defendant had completed his sentence in the case and thus could not file a petition for postconviction relief, the *Fellers* court found it

"appropriate, pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), to retain jurisdiction and remand the cause to the trial court for a hearing on defendant's claim of ineffective assistance of counsel." *Id.* ¶ 36.

¶ 48 We decline defendant's invitation to instruct the appellate court to retain jurisdiction and remand for a sentencing hearing when a defendant lacks standing to file a postconviction petition. We again reiterate that there is no "hole" to close in the Act. Defendant has a remedy. Defendant can file a postconviction petition while his direct appeal is pending. If a defendant's direct appeal is pending and he is nearing the completion of his short sentence, he can preserve his constitutional rights by filing his postconviction petition before his sentence is served. As the court recognized in *Carrera*, a defendant has a remedy to challenge his conviction as long as the challenge is made while the defendant is serving the sentence imposed on that conviction. *Carrera*, 239 Ill. 2d at 259. The fact that defendant is now unable to seek relief using the proper vehicle for his claim—filing a postconviction petition under the Act—does not warrant a different result when defendant could have sought collateral relief before his sentence was served. This court need not, and indeed cannot, create additional remedies apart from those set forth in the Act for those defendants who fail to avail themselves of the remedies set forth in the Act. See *id.* To the extent the court in *Fellers* held to the contrary, we hereby overrule that decision.

¶ 49                                                    CONCLUSION

¶ 50 For the reasons set forth above, we find that the appellate court properly concluded that the record in this case was insufficient to decide defendant's claim of ineffective assistance of counsel on direct appeal. We also reject defendant's request to allow defendant to file a petition for postconviction relief or to order the appellate court to retain jurisdiction and remand the case for an evidentiary hearing in the trial court. We therefore affirm the appellate court's decision affirming defendant's conviction.

¶ 51 Affirmed.

¶ 52 CHIEF JUSTICE BURKE, concurring in part and dissenting in part:

¶ 53 I agree with the majority that the evidence of record is insufficient to permit us to rule on the merits of defendant's claim of ineffective assistance of trial counsel. Where a defendant's claim of ineffectiveness is based on counsel's failure to file a suppression motion, the record is frequently incomplete or inadequate to evaluate that claim. See *People v. Bew*, 228 Ill. 2d 122, 134 (2008) (citing *Massaro v. United States*, 538 U.S. 500, 504-05 (2003)). That is the case here. There are simply too many unanswered factual questions regarding the circumstances leading to defendant's arrest to determine whether trial counsel's failure to file a motion to suppress was a strategic decision or whether the motion, if filed, would have been successful.

¶ 54 I also agree with the majority that this court "cannot expand the remedy set forth in the [Post-Conviction Hearing] Act in order to bring a defendant's case within the reach of the Act." *Supra* ¶ 43 (citing *People v. Carrera*, 239 Ill. 2d 241, 259 (2010)). The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)) is a legislative creation. As a court of law, we do not have the authority to alter the statutory criteria for obtaining relief under the

Act and permit defendant to file a postconviction petition when his sentence has already been completed.

¶ 55   I disagree, however, with the majority's refusal to order the appellate court to remand the cause to the circuit court for an evidentiary hearing on defendant's claim of ineffective assistance of trial counsel. In so doing, the majority denies defendant any opportunity to have an important constitutional claim reviewed. This is fundamentally unfair, and there is no legal basis for the court to deny such relief. I therefore respectfully dissent.

¶ 56   As the majority acknowledges, a defendant will typically raise an apparent claim of ineffective assistance of trial counsel on direct appeal and "then file a petition for postconviction relief if the appellate court on direct appeal finds the record is inadequate to decide the claim." *Supra* ¶ 38. This is what defendant attempted to do in the present case. Defendant raised an ineffectiveness claim on direct appeal, and the appellate court found the record inadequate to decide the claim. However, defendant could not file a postconviction petition because he had fully served his sentence and the Post-Conviction Hearing Act does not provide postconviction relief for a defendant who has completed his sentence. Defendant advised the appellate court of this situation and asked the appellate court to retain jurisdiction while remanding to the circuit court for an evidentiary hearing. The appellate court refused to even consider this avenue for granting defendant relief. Thus, defendant is precluded from ever raising his claim of ineffective assistance of trial counsel.

¶ 57   The majority contends that defendant is not being denied a remedy. According to the majority, "[o]ur legislature has enacted a statute under which some defendants with short sentences may have to file their postconviction petitions while their direct appeals are pending, in order to preserve their postconviction rights." *Supra* ¶ 43. However, the majority misapprehends what defendant is requesting. Whatever defendant would be required to do to preserve his postconviction rights is not relevant on this issue. The defendant is asking that the appellate court provide him relief *in his direct appeal* by remanding the cause to the circuit court for an evidentiary hearing. Thus, the question before us at this juncture is whether the appellate court has the authority to grant defendant relief on direct appeal. The answer, of course, is yes. Pursuant to Illinois Supreme Court Rule 366 (Ill. S. Ct. R. 366 (eff. Feb. 1, 1994)), the appellate court has the inherent authority as a court of review to grant any relief that it deems necessary to do justice.

¶ 58   The majority does not cite any law, and I am unaware of any law, that would preclude the appellate court from granting defendant's request on direct appeal. Nevertheless, the majority holds that the defendant's failure to file a postconviction petition, before the appellate court finds that the record is inadequate to address defendant's ineffectiveness claim, strips the appellate court of any power to grant relief on direct appeal. This conclusion is absurd, finds no support in the law, and is fundamentally unfair.

¶ 59   The majority's unwarranted limitation on the appellate court's authority to craft an appropriate remedy in cases where, as here, the defendant has no recourse to obtaining postconviction relief is particularly problematic in this case because the facts that are contained in the record show that defendant's claim of ineffective assistance of counsel for failure to file a motion to quash and suppress has a reasonable probability of success.

¶ 60   A defendant is constitutionally entitled to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Denial of this right is grounds for reversal of a defendant's

conviction. Where, as here, defendant has made a substantial showing that his fourth amendment rights were violated and, therefore, trial counsel was ineffective for failing to file a motion to quash arrest and suppress evidence, there must be some meaningful opportunity for review of that claim.

¶ 61 The answer is to grant defendant's request to send the matter back to the appellate court with directions that it retain jurisdiction and remand to the circuit court for an evidentiary hearing to develop the record regarding the facts surrounding defendant's arrest. This remedy does justice without doing damage to our laws or our jurisprudence. The appellate court has often found it necessary to remand a matter to the circuit court for further hearing when it determines that the record is insufficient to permit review of an issue on appeal. I can find no reason why the appellate court should not take such action here.

¶ 62 For the reasons stated above, I partially concur and partially dissent from the majority's judgment in this case.