NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200006-U

NO. 4-20-0006

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 14, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| DEVANTE J. HALL, | ) | No. 19CF703 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Coryell, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The record is insufficient to enable us to rule on defendant's claim of ineffective
assistance of counsel. (2) The trial court abused its discretion by admitting text
messages without a sufficient foundation, but the error is harmless given the
evidence.

¶ 2    A jury convicted defendant on October 23, 2019, of armed violence (720 ILCS
5/33A-2(a) (West 2018)) and aggravated fleeing or attempting to elude an officer (625 ILCS 5/11-
204.1(a)(1) (West 2018)). The defendant filed a motion for a new trial or judgment
notwithstanding the verdict, alleging, *inter alia*, the trial court committed error by admitting
photographs of a witness's text messages purportedly with defendant. On November 22, 2019, the
court denied defendant's motion and sentenced him to 15 years of incarceration. Defendant did
not file a motion to reconsider his sentence but appealed. Defendant asserts the cumulation of
errors entitles him to a new trial. Specifically, he raises two issues: (1) that trial counsel was

ineffective by failing to object to what he characterizes as hearsay testimony, or seek a limiting jury instruction once the court admitted the testimony and (2) that the court erred by admitting text messages supporting defendant's identity without proper foundational testimony. We find there is insufficient evidence to evaluate the ineffective assistance of counsel claim on direct appeal. As to the latter issue, we find the court should not have admitted the text messages, but the error is harmless as there is sufficient other evidence. We therefore affirm the judgment.

¶ 3                                      I. BACKGROUND

¶ 4             Late in the afternoon of May 5, 2019, Z.Y., a witness who was 9 years old at the time of trial, saw someone pull into the parking lot where he was riding his hoverboard. The driver got out of the car and broke a glass bottle on the hood of another car before getting back in his vehicle and leaving. As the driver was getting back in his car, he dropped a handgun and then picked it up. This young witness did not describe the driver's vehicle or the driver. Shortly thereafter, a police officer arrived and spoke to witnesses. Someone gave the officer information about the suspected owner of the car driven by the individual who damaged the other car. Early the next morning, police officers thought they located the subject vehicle, and engaged in a high-speed pursuit of the vehicle through Decatur, Illinois. At some point, officers lost sight of the vehicle but found it abandoned shortly thereafter. An officer found defendant near where the car had been abandoned.

¶ 5             The State charged defendant with armed violence, aggravated fleeing or attempting to elude an officer, unlawful possession of a controlled substance with a prior unlawful possession of a controlled substance with intent to deliver conviction (720 ILCS 570/402(c) (West 2018)), along with several other offenses that the State dismissed on the eve of trial and one that the trial

court severed. On October 21, 2019, a jury trial commenced. The State called multiple witnesses, whose testimony relevant to the issues herein we summarize below.

¶ 6 Decatur police officer Kyle Sellek was dispatched to the above-referenced parking lot shortly after 5 p.m. on May 5, 2019, where he interviewed some witnesses and took some pictures. Several of the State's exhibits depicted text messages from Aysha Ellison's phone. Someone at the scene, who is not identified in the record, gave Sellek "descriptors of a vehicle that was involved in this incident and a possible owner," which he gave to his dispatcher who then ran a Soundex search for information the Secretary of State maintains. Sellek did not identify what "descriptors" he was provided or what he told the dispatcher. Sellek also provided the dispatcher with a specific owner, but the identity of that owner is not identified in the record. The dispatcher advised the Soundex search identified the owner of the vehicle as Pamela Hall, and that the car was a 2013 maroon Kia Optima.

¶ 7 Shortly after 1 a.m. on May 6, 2019, Decatur police officer Brad Saul was patrolling when he saw a maroon Kia fitting the description of the vehicle involved in the above-described incident. Saul began to follow the Kia, which then began accelerating and ignoring red traffic lights. Saul radioed other officers who took over pursuit of the Kia.

¶ 8 Justin Ziller, another Decatur police officer, became involved in the pursuit of the Kia Optima. During the pursuit, the Kia stopped, turned around, and drove toward Ziller. When the Kia did so, it was moving slowly as it had turned around, and Ziller was nearly stopped as he was concerned the Kia was going to collide with him. Ziller saw the driver for "a matter of seconds." Ziller got a "good look" at the face of the driver of the Kia, who appeared to be the only one in the car, and who he identified as defendant. The jury also viewed Ziller's dash camera footage which depicts the foregoing.

¶ 9    Sergeant Steve Hagemeyer also followed the Kia for approximately 80 blocks, before losing sight of it. During the pursuit, Hagemeyer noted the Kia was travelling at nearly 90 miles per hour in a 40 mile per hour zone, and ignoring stop lights and stop signs. Hagemeyer testified it was but a couple of minutes after he lost sight of the Kia that other officers located the Kia.

¶ 10    Officer Donald Larson and another officer who were on bike patrol testified they searched for and found a firearm along the curb of the roadway near where Hagemeyer lost sight of the Kia.

¶ 11    Officer Tamara Tucker testified she was the officer who located the Kia a few minutes after Hagemeyer lost sight of it. Tucker found the Kia on a bridge that crosses Lake Decatur. Because the Kia was on a bridge, Tucker noted there were "limited ways" an occupant could have fled from the Kia.

¶ 12    Officer Stephen Kennedy overheard Tucker on the radio advise she had located the Kia, at which point he began to drive along the lakefront close to where Tucker found the Kia. Kennedy found defendant walking approximately 150 yards from the location Tucker had located the Kia. Kennedy testified defendant was not running away from the area or trying to hide and was cooperative, including when Kennedy placed defendant in handcuffs.

¶ 13    Detective Chad Ramey obtained a search warrant for defendant's property at the jail, which he took to the jail and provided to jail staff. When Ramey asked for defendant's property, the staff provided Ramey with a cell phone. Ramey provided the cell phone to Cody Talley, who works for the Illinois National Guard Counter-Drug Task Force, and asked Talley to extract information from the phone. Talley was not able to and instead, shot a short video of the

information on the phone. Neither Ramey nor Talley had personal knowledge of the owner or user of the cell phone.

¶ 14 Defendant objected to the admission of the information on the phone, which included text messages. Generally, defendant objected on the basis that the State did not lay a sufficient foundation. Specifically, defendant argued that (1) Ramey did not have personal knowledge the phone was defendant's property, (2) Ramey did not observe the jail staff collect the phone from defendant, (3) Ramey did not see defendant give the phone to the jailers, (4) Ramey did not determine if the billing account associated with the phone was in defendant's name, and (5) Ramey's conclusion the phone was defendant's was based solely on what the jail staff told Ramey. Over defendant's objection, the trial court admitted the cell phone and the DVD Talley made of the contents of the phone.

¶ 15 During closing argument, the State argued the text messages shown on the DVD of the cell phone matched those shown to Officer Sellek by Aysha Ellison, as described above. The jury found defendant guilty of armed violence and aggravated fleeing or attempting to elude an officer, but not guilty of unlawful possession of a controlled substance with a prior unlawful possession of a controlled substance with intent to deliver. Defendant filed a motion for a new trial, arguing in part that the trial court committed error by admitting the images of the text messages and the cell phone.

¶ 16 The trial court denied the motion for a new trial, and sentenced defendant to a term of 15 years' imprisonment. From these orders, defendant appeals.

¶ 17 II. ANALYSIS

¶ 18 A. The Record Is Insufficient to Evaluate the

Ineffective-Assistance-of-Counsel Claim

¶ 19    Defendant asserts his attorney should have objected to Officer Sellek's testimony about some of what he learned at the scene of the property damage underlying the charges against defendant. Sellek testified he interviewed four people and received, apparently from one or more of them, "descriptors" of the vehicle alleged to have been involved in the property damage, as well as the name, again not identified on the record, of a possible owner of the car. Whatever information Sellek was given, he provided to his dispatcher to run a Soundex search, which suggested Pamela Hall was the owner of a 2013 maroon Kia Optima. Defendant asserts the foregoing was inadmissible hearsay that violated defendant's right to confrontation, and that his attorney should have objected to its admission or sought a limiting jury instruction.

¶ 20    Ineffective assistance of counsel claims are appropriate for review on direct appeal if the record is sufficient to permit such review. *People v. Veach*, 2017 IL 120649, ¶ 46. If the record is not adequate or complete however, such claims are best addressed in collateral proceedings. *Id.* We are to carefully consider each such claim to determine whether we are able to consider it on direct review. *Id.* ¶ 48. In *Veach*, the record revealed the reason the defendant's attorney stipulated to the admission of certain evidence, and thus, the supreme court concluded the appellate court should consider the ineffective assistance claim on direct appeal. *Id.* ¶ 51.

¶ 21    In other circumstances, such as when we cannot determine from the record whether defense counsel's decision to file a motion to suppress was trial strategy, how the trial court would have ruled, what the factual scenario underlying defendant's arrest was, or whether defendant was prejudiced, it is appropriate for us to decline to review an ineffective assistance claim on direct appeal. *People v. Gayden*, 2020 IL 123505, ¶¶ 29, 34-36.

¶ 22    We cannot determine what information was provided to Sellek, who gave him that information, and what he told the dispatcher, all of which we would need to be further developed

for us to consider this claim. Thus, we do not know (1) whether defendant's counsel should have objected to the evidence, (2) what his thought process was, (3) how the trial court would have handled the objection, or (4) whether defendant was prejudiced. We find the record incomplete and inadequate to address the ineffective assistance of counsel claim on appeal. The claim would be better handled in a collateral proceeding where there would be an opportunity to fully develop the claim. Therefore, we decline to address this claim herein.

¶ 23                    B. The Trial Court Committed Harmless Error

by Admitting the Text Messages

¶ 24        Defendant objected at trial to the introduction of a cell phone and the text messages present on it, which matched those shown to Sellek by one of the witnesses to the property damage. Defendant raised the foundational issue again in his posttrial filing.

¶ 25        The admissibility of text messages is treated like other written evidence such that they must be identified and authenticated. *People v. Watkins*, 2015 IL App (3d) 120882, ¶ 36. Authentication is evidence the writing is what the proponent claims it is, and there must only be a "rational basis" from which the finder of fact can determine the writing belonged to or was authored by the person alleged to have created it. *Id.* The trial court should determine whether the proffered authentication is "more probably true than not." *Id.* Writings can be authenticated by direct or circumstantial evidence, including the substance of the content, whether there are any distinctive characteristics, and whether information therein would be known only by the purported author or by a small group of people. *Id.* ¶ 37.

¶ 26        In *Watkins*, the State offered text messages to demonstrate the defendant used the phone found in a drawer and thereby connect the defendant to the drugs in the drawer. *Id.* ¶ 38. For authentication, the State presented evidence to show the cell phone was found in the same

house as the defendant, but in a drawer in a common area of the home. *Id.* In addition the State proffered that some of the messages were directed at or referred to someone named "Charles", which was the defendant's first name. However, "there were no cell phone records to indicate that the cell phone belonged to or had been used by [the] defendant or anyone else at the residence; there was no eyewitness testimony to indicate that the cell phone belonged to or had been used by [the] defendant or that the messages were being sent to [the] defendant; and there were no identifying marks on the cell phone itself or on the cell phone's display screen to indicate that cell phone belonged to or had been used by [the] defendant (other than possibly the references to "Charles" in the text messages)." *Id.* Finally, the police officer testifying to authentication "had no personal knowledge of the text messages and had no idea who was the owner or user of the cell phone." *Id.* Therefore, the State did not lay a sufficient foundation for the text messages, and the trial court should not have admitted them. *Id.*

¶ 27        For similar reasons, the text messages on the phone seized by the State herein should not have been admitted. Despite that it should not have been difficult for the State to establish that defendant had some connection to the phone, the State failed to do so. There is no evidence defendant owned the phone, or that the billing was in his name. No witness saw defendant with the phone, took it from him, or saw someone else take it from defendant. The record reveals nothing about any distinctive characteristics of the text messages that would associate defendant with the phone. The only evidence offered by the State as foundational was that Ramey testified the jail personnel told Ramey it was defendant's phone. Ramey had no personal knowledge other than that. We deem this foundation insufficient to support admission of the phone or the text messages, and find the court committed error admitting these exhibits.

¶ 28    The erroneous admission of evidence is harmless if, absent its admission, "no reasonable probability" exists the jury would have acquitted. *People v. Stull*, 2014 IL App (4th) 120704, ¶ 104. We apply this harmless error standard when the defendant does not allege constitutional error. *People v. McBride*, 2020 IL App (2d) 107873, ¶ 37.

¶ 29    Defendant alleges a purely evidentiary error, not one of a constitutional magnitude, and we find that even if the trial court would have excluded the text messages, there was not a reasonable probability the jury would have acquitted defendant. Ziller testified he saw defendant behind the wheel of the Kia for a few seconds when defendant turned around, at which time defendant was travelling slowly and Ziller was nearly stationary. Ziller testified he then got a good look at defendant, and that it appeared defendant was the only one in the car. The jury viewed the dash camera video from Ziller's vehicle, such that it had the opportunity to consider for itself whether Ziller could have gotten a good look at defendant. Our supreme court has repeatedly found the testimony of a lone witness can be sufficient to uphold a conviction, if that testimony is positive and credible. *People v. Harris*, 2018 IL 121932, ¶ 27.

¶ 30    Hagemeyer testified he followed the Kia for approximately 80 blocks and it was but a few minutes after he lost sight of the vehicle that other officers located it. Bike patrol officers testified they found a firearm along the curb close to where Hagemeyer lost sight of the Kia. Tucker testified she found the Kia on a bridge and noted that meant there were few routes someone could flee from the car. When Kennedy heard over the radio that Tucker located the Kia on the bridge, Kennedy began to drive along the lakefront. Kennedy then found defendant walking along the lakefront approximately 150 yards from where Tucker found the Kia. As well, the jury could have concluded defendant was the driver of the Kia given the early morning hours when there are presumably few people walking along the lakefront. Finally, the text messages were not integral

to the foregoing pursuit upon which the convictions are based. Thus, absent the admission of the cell phone and text messages, we do not believe there is a reasonable probability the jury would have acquitted defendant of armed violence (for fleeing or attempting to elude an officer while possessing a firearm), or aggravated fleeing or attempting to elude an officer. The trial court's error admitting the phone and text messages was harmless.

¶ 31                                    III. CONCLUSION

¶ 32          For the foregoing reasons, we affirm the circuit court's judgment.

¶ 33          Affirmed.