NOTICE

Decision filed 08/07/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220519-U

NO. 5-22-0519

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 19-CF-229 |
| | ) | |
| KEITH McGREW, | ) | Honorable |
| | ) | James R. Glenn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the postconviction petition's allegations that counsel was ineffective for failing to seek suppression of statements by defendant and his girlfriend, hearsay statement should have been barred, and counsel was ineffective for failing to challenge State's proposed instruction on "cold and calculating" murder clearly lacked merit, the circuit court did not err in summarily dismissing the petition. Moreover, the court's dismissal was procedurally proper. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, Keith McGrew, appeals the circuit court's order summarily dismissing his postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no reasonably meritorious argument that the circuit court erred in dismissing the petition. Accordingly, it has filed a motion to withdraw as counsel along with a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD

1

has notified defendant of its motion, and this court has provided him with ample opportunity to respond. However, he has not done so. After considering the record on appeal and OSAD's motion and supporting memorandum, we agree that this appeal presents no reasonably meritorious issues. Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4     Following a jury trial, defendant was convicted of one count of first degree murder (720 ILCS 5/9-1(a)(1) (West 2018)) but found not guilty of an additional count alleging that the murder was committed in a cold and calculating manner (*id.* § 9-1(a)(11)). The trial court sentenced him to 52 years in prison, which included a 25-year enhancement for personally discharging a firearm (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2018)).

¶ 5     The evidence at trial was that defendant contacted the victim, Mark Currie, on May 16, 2019, because he had heard that Currie could obtain cocaine. He met with Currie that afternoon and the pair drove to meet a third party, from whom defendant purchased cocaine.

¶ 6     Later, Currie contacted defendant to find out if he still had any of the cocaine that he had purchased earlier. Defendant met Currie and some other people in a park. They spent several hours drinking, smoking marijuana, and using cocaine. After the group left the park, defendant walked back toward Currie's apartment with him. After they were alone, Currie suggested that he might pay defendant to perform oral sex on him. Defendant left the apartment and returned to one that he shared with his girlfriend, Cedrica Smith.

¶ 7     Smith, who had a pending obstruction of justice charge for allegedly helping to hide the gun that was used to shoot Currie, testified that defendant was upset by Currie's comment, but said that he was going to let it go. However, he seemed "jittery" and could not relax. Around 12:30

2

a.m., defendant abruptly left the apartment after receiving a phone call or text message. She followed him out but could not find him.

¶ 8    Smith's friend Timeka Griffin testified pursuant to a grant of immunity that Smith had told her that defendant was "in a rage" when he told Smith about the sexual comment. The State asked Griffin several times about Smith's alleged statement, with the trial court overruling a defense objection that the question had been "asked and answered."

¶ 9    Mattoon police officers interrogated defendant for about two hours. He repeatedly stated that he had been scared because Currie had tried to rape him. The officers admittedly lied to him, suggesting that they "believed him 100%." The officers suggested that he was "defending [his] manhood" when he shot Currie. He agreed, while continuing to insist that Currie had tried to rape him. When asked whether he was angry at Currie's sexual advances, defendant nodded his head. Eventually, the questioning became more aggressive as the officers pressed defendant to "open[ ] up." The officers testified that defendant was "evasive" and attempting to "control the narrative," leading them to believe that he was not being truthful. The video of his interrogation was played for the jury.

¶ 10    Defendant testified as follows. He left the apartment after receiving a message from Currie that he had more cocaine. He brought a gun because he had a "funny feeling." When he arrived at Currie's apartment, they talked and used cocaine for a while. At one point, he looked up after snorting some cocaine off of a table and saw that Currie had taken his penis out of his pants. Defendant asked what he was doing and said that he was "not like that." Currie stood up and began putting his penis back in his pants while defendant tried to finish his cocaine and gather his things so he could leave. As he started to leave, Currie said, "where do you think you're going," and said something about defendant "sucking his d***." Currie then grabbed him and tried to grab

3

his penis. The two started wrestling. Defendant pushed Currie back toward the living room couch. As Currie, who was much larger, came at him again, defendant pulled out the gun. Currie kept coming at him, so defendant pulled the trigger, although he could not remember how many times.

¶ 11 Defendant left the apartment and went outside. He saw a group of people standing in the parking lot and yelled that Currie had tried to rape him, so he had "popped" him. He panicked at that point. He began running away from the parking lot and took off his shirt, which had blood on it. He later returned to the parking lot, thinking he would wait for the police, but continued to panic and left the area again. He was drunk and high on cocaine during this entire time.

¶ 12 The prosecution argued that defendant shot Currie in retaliation for his sexual advances. The defense argued that he acted in self-defense after the much larger Currie made sexual advances and came at him aggressively. The jury was instructed on the elements of the count alleging cold and calculating conduct. The jury found defendant guilty of knowing and intentional murder and the firearm enhancement, but rejected the allegation that he committed the murder in a cold and calculating manner. Following a hearing, the court sentenced him to 52 years' imprisonment.

¶ 13 On direct appeal, the Fourth District affirmed. The court rejected several contentions, including, as relevant here, a claim that the circuit court should not have admitted Griffin's testimony that Smith told her defendant was in a rage about Currie's sexual advances as an excited utterance. *People v. McGrew*, 2021 IL App (4th) 200213-U.

¶ 14 Defendant then filed a postconviction petition in which he raised three claims. He contended that (1) trial counsel was ineffective for failing to move to suppress defendant's and Smith's statements to police on the ground that they were obtained through police coercion, and that appellate counsel was ineffective for failing to raise this issue; (2) the trial court erred in admitting as an excited utterance Griffin's testimony that Smith told her defendant was in a rage

4

when he left the apartment and the court erred in overruling his objection to the State's repeated questioning on that subject; and (3) trial counsel was ineffective for failing to object to the use of the "cold and calculated" murder instruction, which confused the jurors, causing them to issue inconsistent verdicts finding defendant guilty of "intentional" murder, but not guilty of "premeditated" murder. The court summarily dismissed the petition and defendant appeals.

¶ 15                                    ANALYSIS

¶ 16    OSAD concludes that there is no reasonably meritorious argument that the court erred by dismissing defendant's postconviction petition. It discusses separately each of the three broad issues raised and concludes that they clearly lack merit. Moreover, it contends that the court's dismissal was procedurally proper. We agree.

¶ 17    Defendant's first contention was that trial counsel was ineffective for failing to seek suppression of his and Smith's custodial statements. He argued that the police repeatedly lied and that their questioning became loud and aggressive, rendering the statements involuntary. He further alleged that appellate counsel was ineffective for failing to raise the issue on direct appeal.

¶ 18    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. *Id.* § 122-1(a); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). The circuit court may summarily dismiss a petition if it has no arguable basis either in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009); 725 ILCS 5/122-2.1(a)(2) (West 2020). We review *de novo* the summary dismissal of a postconviction petition. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

¶ 19    Ineffective-assistance-of-counsel claims are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), requiring a defendant to establish both that (1) his

"counsel's performance fell below an objective standard of reasonableness" and (2) "a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Gayden*, 2020 IL 123505, ¶ 27. "The failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *Id.* To establish deficient performance under the first *Strickland* prong, "the defendant must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy." *People v. Perry*, 224 Ill. 2d 312, 341-42 (2007). To survive summary dismissal at the first stage of postconviction proceedings, however, a postconviction petition need only show (1) that it is arguable that counsel's performance fell below an objective standard of reasonableness, and (2) it is arguable that the defendant was prejudiced. *People v. Hodges*, 234 Ill. 2d 1, 17 (2009).

¶ 20 The admission of an involuntary confession denies a defendant due process. *People v. Richardson*, 234 Ill. 2d 233, 253 (2009). A confession is voluntary if it is "the product of an essentially free and unconstrained choice by its maker." (Internal quotation marks omitted.) *Id.* Conversely, a confession is involuntary if the defendant's "will has been overborne" and his or her "capacity for self-determination critically impaired." (Internal quotation marks omitted.) *Id.* In deciding whether a confession was voluntary, "a court must consider the totality of the circumstances of the particular case," and "no single factor is dispositive." *Id.* Factors to consider include the defendant's age, intelligence, background, experience, mental capacity, education, and physical condition at the time of questioning; the legality and duration of the detention; the presence of *Miranda* warnings; the duration of the questioning; and any physical or mental abuse by police, including the existence of threats or promises. *Id.* at 253-54.

¶ 21 With respect to Smith's statements, defendant may not assert the fifth amendment privilege on Smith's behalf. The fifth amendment provides that no person "shall be compelled in any

6

criminal case to be a witness against himself." U.S. Const., amend. V. Thus, the privilege applies only to the statements of the person asserting it. See *Fisher v. United States*, 425 U.S. 391, 397 (1976).

¶ 22 As to defendant's own statements, counsel was not ineffective for failing to move to suppress them. A confession is not *per se* involuntary if the police lie to a suspect (*People v. Kashney*, 111 Ill. 2d 454, 466-67 (1986)) or use aggressive questioning (*People v. Macias*, 2015 IL App (1st) 132039, ¶¶ 62-63). Here, it does not appear, based on the totality of the circumstances, that defendant's will was overcome. Indeed, he continued to maintain throughout the interrogation that he shot Currie in self-defense.

¶ 23 In any event, defendant's statement was largely exculpatory. As noted, he repeatedly asserted that he shot Currie because he feared the latter was going to rape him. For this reason, counsel could have made a strategic decision to allow the recording of the interrogation to be played. Although the State was allowed to ask the officers to opine that defendant was not telling the truth, playing the recording nevertheless allowed defendant to repeat his version of events.[1] In sum, no nonfrivolous argument can be made that trial counsel's decision to not file a motion to suppress defendant's statement to police was objectively unreasonable and prejudicial to defendant.

¶ 24 Defendant next asserted in his petition that the trial court erred when it allowed Griffin to testify that Smith allegedly said that defendant was "in a rage" prior to the shooting. He further argued that the court erred when it overruled defense counsel's "asked and answered" objections when the State repeatedly questioned Griffin about the statement.

---

[1]On direct appeal, the Fourth District agreed with defendant that this line of questioning violated the rule that a witness should not be allowed to offer an opinion on another witness's credibility but found the error harmless. *McGrew*, 2021 IL App (4th) 200213-U, ¶ 62.

¶ 25   The first part of the argument is barred by *res judicata*. In an initial postconviction proceeding, *res judicata* and forfeiture prohibit raising claims that were or could have been raised on direct appeal. *People v. Blair*, 215 Ill. 2d 427, 443 (2005). On direct appeal, the Fourth District rejected the claim that Griffin's statement should have been barred. *McGrew*, 2021 IL App (4th) 200213-U, ¶ 83. Thus, *res judicata* prohibited raising it again, at least in the absence of new information or new case law that could possibly alter the result.

¶ 26   As to the second part of the claim, even if overruling defense counsel's objections was erroneous, the error was harmless. Griffin's hearsay testimony was not particularly significant, especially given that defendant and Smith both testified on the same subject. Smith said that defendant was upset by Currie's remark. Later, she thought that defendant was "jittery," but not angry. However, defendant admitted during the interrogation that Currie's sexual comments made him angry. In light of this direct evidence, any error in allowing Griffin to testify repeatedly about the hearsay statement was harmless.

¶ 27   Defendant's final claim in the petition was that trial and appellate counsel were ineffective for failing to challenge the "cold and calculated" jury instruction, which confused the jury, resulting in it reaching inconsistent verdicts finding him guilty of intentional murder but not guilty of "cold and calculated" murder. However, counsel was not ineffective because there was no error.

¶ 28   Both the State and defendant are entitled to appropriate instructions which present their theories of the case when the evidence supports such theories. *People v. Janik*, 127 Ill. 2d 390, 398 (1989). Here, the State charged in a separate count that "the murder was committed in a cold, calculated and premeditated manner pursuant to a preconceived plan, scheme or design to take a human life by unlawful means, and the conduct of the defendant created a reasonable expectation that the death of a human being would result therefrom." 720 ILCS 5/9-1(b)(11) (West 2020).

The instructions given here were the standard Illinois Pattern Jury Instructions on that offense. Illinois Pattern Jury Instructions (IPI), Criminal, Nos. 28.03, 28.04 (4th ed. 2000); see Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013) (applicable "IPI Criminal instruction shall be used, unless the court determines that it does not accurately state the law"). Thus, the instructions were proper.

¶ 29 Moreover, the verdicts were not inconsistent. Defendant's argument assumes that "intentional" and "premeditated" are identical, but this is not the case. The fact that "cold and calculated" murder is a separate offense with an enhanced sentencing range demonstrates that the legislature intended it to be distinct from "ordinary" murder. See *People v. Williams*, 193 Ill. 2d 1, 37 (2000) (section 9-1(b)(11) "requires that the murder be 'cold,' *i.e.*, not motivated by mercy or the emotion of the moment, and that it be 'calculated and premeditated, pursuant to a preconceived, plan, scheme or design,' *i.e.*, deliberated or reflected upon for an extended period").

¶ 30 Based on the evidence here, the jury could reasonably have found that defendant intended to shoot Currie at the moment he did so (while rejecting his claim of self-defense) but that the act was not the result of extended deliberation or a preconceived plan. For example, defendant's testimony that he and Currie sat in his apartment talking and sharing cocaine for some time prior to the murder, if believed, would tend to disprove that defendant went to the apartment with a preconceived plan to kill the victim.

¶ 31 Finally, OSAD suggests that the circuit court's dismissal of the petition was procedurally proper. The Act provides that the court may summarily dismiss a petition within 90 days of its filing. 725 ILCS 5/122-2.1(a) (West 2020). If it does not, the petition must be docketed for further proceedings. *Id.* Here, the petition was filed on June 27, 2022. The court summarily dismissed it on July 11, 2022, well within the 90-day window. Moreover, there is no evidence in the record suggesting that the State participated in the court's consideration of the petition. See *People v.*

9

*Boclair*, 202 Ill. 2d 89, 99 (2002) (State may not raise arguments against petition at summary review stage). Thus, there is no basis in the record for an argument that the dismissal was procedurally improper.

¶ 32                                    CONCLUSION

¶ 33    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.


¶ 34    Motion granted; judgment affirmed.